Patrick R. Leverty, Esq. NV Bar No. 8840
LEVERTY & ASSOCIATES LAW CHTD.
608 Lander Street
Reno, NV 89509
Tel.: (775) 322-6636
Fax: (775) 322-3953
Email: pat@levertylaw.com

*Counsel for Plaintiff*

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| KENNETH DAWSON, derivatively on behalf of RICHTECH ROBOTICS INC.,<br><br>Plaintiff,<br><br>v.<br><br>ZHENWU (WAYNE) HUANG, ZHENQIANG (MICHAEL) HUANG, SAUL FACTOR, STEPHEN MARKSCHEID, and JOHN SHIGLEY,<br><br>Defendants,<br><br>and<br><br>RICHTECH ROBOTICS INC.,<br><br>Nominal Defendant. | Case No.<br><br>**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Kenneth Dawson ("Plaintiff"), by and through Plaintiff's undersigned attorneys, derivatively on behalf of Nominal Defendant Richtech Robotics Inc. ("Richtech" or the "Company"), brings this Verified Shareholder Derivative Complaint against Zhenwu (Wayne) Huang ("Wayne Huang"), Zhenqiang (Michael) Huang ("Michael Huang"), Saul Factor

("Factor"), Stephen Markscheid ("Markscheid"), and John Shigley ("Shigley") (collectively, the "Individual Defendants" and, together with Richtech, "Defendants") for and among other things, their breaches of fiduciary duties and violations of the federal securities laws.

Plaintiff's allegations are based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief, including a review of publicly available information, including filings by Richtech with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, publicly available filings in lawsuits, and matters of public record. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a shareholder derivative action brought against certain Richtech officers and members of Richtech's Board of Directors (the "Board") that seeks to remedy wrongdoing the Individual Defendants committed from at least between January 27, 2026 and January 29, 2026, inclusive (the "Relevant Period").

2. Richtech is a robotics and artificial intelligence ("AI") company that focuses on the development and deployment of embodied AI systems for commercial use throughout the United States.

3. The Company's AI technologies are utilized across several industries, including industrial manufacturing, automotive, healthcare, hospitality, food service, and retail. These systems are marketed as being capable of carrying out numerous industrial and commercial functions. One prominent product offered by the Company is "ADAM," an AI-powered service robot designed to automate the preparation of a variety of beverages.

4. In January 2026, Richtech announced that it had begun working with Microsoft AI Co-Innovation Labs ("Microsoft") in connection with the advancement of the Company's robotic technologies, including ADAM.

5. Throughout the Relevant Period, the Individual Defendants represented or suggested that the Company maintained a collaborative business relationship with Microsoft involving joint engineering initiatives.

6. By way of example, on January 27, 2026, the Company released a statement entitled "Richtech Robotics Collaborates with Microsoft to Advance Agentic AI in Real-World Robotics Applications" (the "January 27, 2026 Press Release"). The January 27, 2026 Press Release stated that "[Richtech] today announced a hands-on collaboration with Microsoft through the Microsoft AI Co-Innovation Labs to jointly develop and deploy agentic artificial intelligence capabilities in real-world robotic systems."

7. Also on January 27, 2026, the Company entered into a private placement transaction with an institutional investor (the "Private Placement"). Pursuant to the agreement, 8,500,000 shares of the Company's Class B Common Stock were sold at a purchase price of $4.55 per share, generating gross proceeds of approximately $38.7 million.

8. On January 29, 2026, Hunterbrook Media published an article titled "Breaking: Microsoft Denies Partnership with Richtech Robotics" (the "Hunterbrook Article"). According to the Hunterbrook Article, contrary to the Individual Defendants' representations, "Microsoft tells [Hunterbrook] the engagement was a "standard" customer program with "no commercial element.""

9. Following this disclosure, the Company's Class B common stock declined by $1.06 per share, or approximately 20.87%, falling from a closing price of $5.08 per share on January 28, 2026 to close at $4.02 per share on January 29, 2026. As the market continued reacting to revelations concerning the Company's relationship with Microsoft, the stock price dropped an additional $0.44 per share, or roughly 10.9%, from $4.02 per share on January 29, 2026 to close at $3.58 per share on January 30, 2026.

10. In light of the Individual Defendants' misconduct, the Company as well as Defendants Wayne Huang and Michael Huang were named as defendants in a federal securities

fraud class action lawsuit in this Court, captioned *Diez v. Richtech Robotics Inc.*, *et al.*, 2:26-cv-00231 (D. Nev.) (the "Securities Class Action"). The Securities Class Action has further subjected Richtech to the need to undertake internal investigations and to implement adequate internal controls, as well as exposed the Company to considerable class-wide liability.

**JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 Plaintiff's claims raise a federal question under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. § 78j(b)) and Section 21D of the Exchange Act (15 U.S.C. § 78u-4(f)). Plaintiff's claims also raise a federal question as to the claims made in the Securities Class Action based on violations of the Exchange Act.

12. This Court has jurisdiction over each Defendant named herein because each Defendant is either a corporation that conducts business in and maintains operations in this District or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

13. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 USC. §1367(a).

14. This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Richtech's principal executive offices are located in this district, a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this district by engaging in numerous activities that had an effect in this District.

**PARTIES**

16. Plaintiff is a current shareholder of Richtech and has continuously held Richtech stock at all relevant times.

17. Nominal Defendant Richtech is a Nevada corporation and its principal executive offices are located at 2975 Lincoln Road, Las Vegas, Nevada. The Company's common stock trades on the Nasdaq under the ticker symbol "RR."

18. Defendant Wayne Huang has served as the Company's Chief Executive Officer ("CEO") and as a Company director since July 2016. According to the annual report filed on Form 10-K with the SEC on January 20, 2026 (the "2025 10-K"), in the 2025 fiscal year, Defendant Wayne Huang received $126,000 in total compensation from the Company. According to the proxy statement filed on Schedule 14A with the SEC on September 16, 2025 (the "2025 Proxy Statement"), as of August 25, 2025, Defendant Wayne Huang beneficially owned 30,308,000 shares of the Company's Class A common stock, which amounted to 59.1% of the Company's total voting power.

19. Defendant Michael Huang has served as the Company's Chief Financial Officer ("CFO") and as a Company director since July 2016. According to the 2025 Proxy Statement, as of August 25, 2025, Defendant Michael Huang beneficially owned 7,892,000 shares of the Company's Class A common stock, which amounted to 15.4% of the Company's total voting power.

20. Defendant Factor has served as a Company director since November 2023. Defendant Factor also serves as a member of the Board's Audit Committee, Compensation Committee, and Nominating and Corporate Governance Committee. According to the 2025 10-K, in the 2025 fiscal year, Defendant Factor received $54,800 in total compensation from the Company. According to the 2025 Proxy Statement, as of August 25, 2025, Defendant Factor beneficially owned 22,000 shares of the Company's Class B common stock.

21. Defendant Stephen Markscheid has served as a Company director since November 2023. Defendant Markscheid also serves as Chair of both the Board's Compensation Committee and its Nominating and Corporate Governance Committee, and as a member of the Audit Committee. According to the 2025 10-K, in the 2025 fiscal year, Defendant Markscheid received $54,800 in total compensation from the Company. According to the 2025 Proxy Statement, as of August 25, 2025, Defendant Markscheid beneficially owned 22,000 shares of the Company's Class B common stock.

22. Defendant John Shigley has served as a Company director since November 2023. Defendant Shigley also serves as the Chair of the Board's Audit Committee. According to the 2025 10-K, in the 2025 fiscal year, Defendant Shigley received $54,800 in total compensation from the Company. According to the 2025 Proxy Statement, as of August 25, 2025, Defendant Shigley beneficially owned 22,000 shares of the Company's Class B common stock.

## **FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS**

23. By reason of their positions as officers, directors, and/or fiduciaries of Richtech and because of their ability to control the business and corporate affairs of Richtech, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders.

24. Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, as well as the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information regarding the Company's operations, finances, financial condition, and present and

future business prospects so that the market price of the Company's stock would be based on truthful and accurate information.

25. The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial and directorial positions with the Company, each of the Defendants had access to adverse non-public information about the financial condition, operations, sales and marketing practices, and improper representations of the Company.

26. To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

(a) ensure that Richtech complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(b) conduct Richtech's affairs in an efficient, businesslike manner in order to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c) properly and accurately guide investors and analysts as to the true financial condition of Richtech at any given time, including making accurate statements about the Company's business prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(d) remain informed as to how Richtech conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable

inquiries in connection therewith, take steps to correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws;

(e) abstain from benefiting themselves to the detriment of Richtech;

(f) ensure that Richtech was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state and local laws, and rules and regulations; and

(g) ensure that all decisions were the product of independent business judgment and not the result of outside influences or entrenchment motives.

27. Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

**CODE OF ETHICS**

28. Richtech maintains a Code of Ethics, which states that it "is applicable to all directors, officers, and employees of the Company." The Code of Ethics further states that its purpose is to:

- promote honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships;
- promote the full, fair, accurate, timely, and understandable disclosure in reports and documents that the Company files with, or submits to, the Securities and Exchange Commission (the "SEC"), as well as in other public communications made by or on behalf of the Company;
- promote compliance with applicable governmental laws, rules, and regulations;

- deter wrongdoing; and
- require prompt internal reporting of breaches of, and accountability for adherence to, this Code

29. In a section titled "Honest, Ethical and Fair Conduct," the Code of Ethics provides as follows, in relevant part:

> Each person owes a duty to the Company to act with integrity. Integrity requires, among other things, being honest, fair, and candid. Deceit, dishonesty, and subordination of the Company's interests to personal interests are inconsistent with integrity. Service to the Company should never be subordinated to personal gain or advantage.

30. In a section titled "Disclosure," the Code of Ethics provides as follows, in relevant part:

> The Company strives to ensure that the contents of and the disclosures in public communications and in the reports and documents that the Company files with the SEC shall be full, fair, accurate, timely, and understandable in accordance with applicable disclosure standards, including standards of materiality, where appropriate. Each person must:
>
> - not knowingly misrepresent, or cause others to misrepresent, facts about the Company to others, whether within or outside the Company, including to the Company's independent auditors, governmental regulators, self-regulating organizations, and other governmental officials, as appropriate; and
> - in relation to his or her area of responsibility, properly review and critically analyze proposed disclosure for accuracy and completeness.
>
> In addition to the foregoing, the Chief Executive Officer and Chief Financial Officer of the Company and each subsidiary of the Company (or persons performing similar functions), and each other person that typically is involved in the financial reporting of the Company must familiarize himself or herself with the disclosure requirements applicable to the Company as well as the business and financial operations of the Company.

31. In a section titled "Compliance," the Code of Ethics provides as follows:

> It is the Company's obligation and policy to comply with all applicable governmental laws, rules, and regulations. It is the personal responsibility of each person to, and each person must, adhere to the standards and restrictions imposed

> by those laws, rules, and regulations, including those relating to accounting and auditing matters.

32. A subsection of the Code of Ethics is titled "Provisions for Chief Executive Officer and Senior Financial Officers." That subsection provides the following, in relevant part:

> The Chief Executive Officer and all senior financial officers, including the Chief Financial Officer and principal accounting officer, are bound by the provisions set forth therein relating to ethical conduct, conflicts of interest, and compliance with law. In addition to the Code, the Chief Executive Officer and senior financial officers are subject to the following additional specific policies:
>
> 1. Act with honesty and integrity, avoiding actual or apparent conflicts between personal, private interests and the interests of the Company, including receiving improper personal benefits as a result of his or her position.
>
> 2. Disclose to the Board (and the Chief Executive Officer in the case of a senior financial officer) any material transaction or relationship that reasonably could be expected to give rise to a conflict of interest.
>
> 3. Perform responsibilities with a view to causing periodic reports and documents filed with or submitted to the SEC and all other public communications made by the Company to contain information that is accurate, complete, fair, objective, relevant, timely and understandable, including full review of all annual and quarterly reports.
>
> 4. Comply with laws, rules and regulations of federal, state and local governments applicable to the Company and with the rules and regulations of private and public regulatory agencies having jurisdiction over the Company.
>
> 5. Act in good faith, responsibly, with due care, competence and diligence, without misrepresenting or omitting material facts or allowing independent judgment to be compromised or subordinated.
>
> 6. Respect the confidentiality of information acquired in the course of performance of his or her responsibilities except when authorized or otherwise legally obligated to disclose any such information; not use confidential information acquired in the course of performing his or her responsibilities for personal advantage.
>
> 7. Share knowledge and maintain skills important and relevant to the needs of the Company, its stockholders and other constituencies and the general public.
>
> 8. Proactively promote ethical behavior among subordinates and peers in his or her work environment and community.
>
> 9. Use and control all corporate assets and resources employed by or entrusted to him or her in a responsible manner.

> 10. Not use corporate information, corporate assets, corporate opportunities or his or her position with the Company for personal gain; not compete directly or indirectly with the Company.
>
> 11. Comply in all respects with the Company's Code.
>
> 12. Advance the Company's legitimate interests when the opportunity arises.

**AUDIT COMMITTEE CHARTER**

33. Richtech also maintains an Audit Committee Charter (the "Charter"), which states that the purpose of the Audit Committee is to:

> assist the Board in monitoring (1) the integrity of the annual, quarterly and other financial statements of the Company, (2) the independent auditor's qualifications and independence, (3) the performance of the Company's independent auditor and (4) the compliance by the Company with legal and regulatory requirements.

34. In a section titled "Committee Authority and Responsibilities," the Charter provides the following, in relevant part:

> The Audit Committee shall:
>
> Financial Statement and Disclosure Matters
>
> 1. Meet with the independent auditor prior to the audit to review the scope, planning and staffing of the audit.
>
> 2. Review and discuss with management and the independent auditor the annual audited financial statements, and recommend to the Board whether the audited financial statements should be included in the Company's Annual Reports on Form 10-K (or the annual report to stockholders if distributed prior to the filing of the Form 10-K).
>
> 3. Review and discuss with management and the independent auditor the Company's quarterly financial statements prior to the filing of its Quarterly Reports on Form 10-Q, including the results of the independent auditor's review of the quarterly financial statements.
>
> 4. Discuss with management and the independent auditor, as appropriate, significant financial reporting issues and judgments made in connection with the preparation of the Company's financial statements, including:
>
> > a. any significant changes in the Company's selection or application of accounting principles;
> >
> > b. the Company's critical accounting policies and practices;

c. all alternative treatments of financial information within U.S. generally accepted accounting principles ("GAAP") that have been discussed with management and the ramifications of the use of such alternative accounting principles;

d. any major issues as to the adequacy of the Company's internal controls and any special steps adopted in light of material control deficiencies; and

e. any material written communications between the independent auditor and management, such as any management letter or schedule of unadjusted differences.

5.Discuss with management the Company's earnings press releases generally, including the use of "pro forma" or "adjusted" non-GAAP information, and any financial information and earnings guidance provided to analysts and rating agencies. Such discussion may be general and include the types of information to be disclosed and the types of presentations to be made.

6.Discuss with management and the independent auditor the effect on the Company's financial statements of (i) regulatory and accounting initiatives and (ii) off-balance sheet structures.

7.Discuss with management the Company's major financial risk exposures and the steps management has taken to monitor and control such exposures, including the Company's risk assessment and risk management policies.

8.Discuss with the independent auditor the matters required to be discussed by Statement on Auditing Standards No. 61 (as may be modified or amended) relating to the conduct of the audit, including any difficulties encountered in the course of the audit work, any restrictions on the scope of activities or access to requested information, and any significant disagreements with management as well as the matters in the written disclosures required by the applicable requirements of the Public Company Accounting Oversight Board regarding the independent accountant's communications with the Audit Committee concerning independence.

9.Review disclosures made to the Audit Committee by the Company's Chief Executive Officer and Chief Financial Officer (or individuals performing similar functions) during their certification process for the Company's Annual Reports on Form 10-K and Quarterly Reports on Form 10-Q about any significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting and any fraud involving management or other employees who have a significant role in the Company's internal control over financial reporting.

***

<u>Compliance Oversight Responsibilities</u>

> 1. Obtain assurance from the independent auditor that Section 10A(b) of the Exchange Act has not been implicated.
>
> 2. Review and approve all related-party transactions.
>
> 3. Inquire and discuss with management the Company's compliance with applicable laws and regulations and with the Company's Code of Ethics in effect at such time, if any, and, where applicable, recommend policies and procedures for future compliance.
>
> 4. Establish procedures (which may be incorporated in the Company's Code of Ethics, in effect at such time, if any) for the receipt, retention and treatment of complaints received by the Company regarding accounting, internal accounting controls or reports which raise material issues regarding the Company's financial statements or accounting policies.
>
> 5. Discuss with management and the independent auditor any correspondence with regulators or governmental agencies and any published reports that raise material issues regarding the Company's financial statements or accounting policies.
>
> 6. Discuss with the Company's General Counsel legal matters that may have a material impact on the financial statements or the Company's compliance policies.
>
> 7. Review and approve all payments made to the Company's officers and directors or its or their affiliates. Any payments made to members of the Audit Committee will be reviewed and approved by the Board, with the interested director or directors abstaining from such review and approval.

## **SUBSTANTIVE ALLEGATIONS**

62. Richtech's products primarily involve embodied AI systems designed for use by businesses. Embodied AI refers to artificial intelligence systems that exist in physical form, including autonomous drones and humanoid robots. The Company develops products intended for a broad range of industries, including manufacturing, food service, retail, hospitality, automotive, and healthcare.

63. The Company has stated that its AI systems are intended to perform tasks such as floor cleaning, delivery packaging, and operation of factory production lines. In addition, the Company has expressed its ambition to become a "Super-Operator," meaning a company operating more than one hundred thousand intelligent AI-driven robots.

64. One of the Company's featured robotic systems is ADAM, a dual-armed AI service robot. ADAM was developed to automate beverage preparation in hospitality and retail environments and is capable of performing the entire drink-making process, including mixing, shaking, and espresso extraction.

65. On December 29, 2025, the Company filed a notification of inability to timely file on Form NT 10-K (the "2025 NT 10-K"), concerning its annual report on Form 10-K for the fiscal year ending September 30, 2025. Although the SEC permitted the Company, due to its size, to submit the 2025 10-K by December 29, 2025, the Company instead filed the 2025 NT 10-K, extending the filing deadline to January 13, 2026. Even after obtaining that extension, however, the Company failed to timely file the 2025 10-K, ultimately submitting it on January 20, 2026.

66. On January 27, 2026, the Company commenced the Private Placement. Through that transaction, 8,500,000 shares of Class B Common Stock were sold at $4.55 per share, generating gross proceeds of approximately $38.7 million.

67. Also on January 27, 2026, the Company issued the January 27, 2026 Press Release, which included the following subheading: "[j]oint engineering effort with Microsoft AI Co-Innovation Labs enhances Richtech's ADAM robot and extends intelligent automaton across physical environments."

68. The January 27, 2026 Press Release further provided, in pertinent part:

> [Richtech] today announced a hands-on collaboration with Microsoft through the Microsoft AI Co-Innovation Labs to jointly develop and deploy agentic artificial intelligence capabilities in real-world robotic systems.
>
> Through close collaboration between Richtech Robotics' engineering team and Microsoft's AI Co-Innovation Labs, the companies worked together to enhance Richtech Robotics' ADAM robot with adaptive intelligence powered by Azure AI. The collaboration focused on applying vision, voice, and autonomous reasoning to physical environments, enabling robots to move beyond task execution and support more contextual, conversational, and operationally aware interactions.
>
> Richtech Robotics and Microsoft enhanced ADAM with additional layers of context awareness, allowing the robot to incorporate signals such as time of day, weather, and promotions, respond more naturally to customer preferences, and

> apply vision-based models to maintain speed and quality during peak demand. These capabilities also support operational awareness, including notifying staff of ingredient or equipment issues before disruptions occur. These capabilities are designed to support smoother workflows and more responsive customer interactions in retail environments.
>
> While ADAM serves as a flagship example, the collaboration demonstrates how agentic AI capabilities can be applied across a range of physical environments, including logistics, hospitality, manufacturing, and other operational settings where real-time perception, reasoning, and reliability are essential. By combining physical robotics with cloud-based AI models, Richtech Robotics can apply software-driven intelligence across its portfolio to improve operational visibility, service quality, and performance without requiring extensive new hardware investments.
>
> ***
>
> The collaboration underscores Richtech Robotics' continued investment in data-driven automation and physical AI, leveraging cloud intelligence, perception, and autonomous reasoning to improve performance across commercial and industrial applications.

70. The January 27, 2026 Press Release quoted Defendant Wayne Huang as stating that "[o]ur collaboration with Microsoft reflects a shared focus on applying advanced AI to practical, real-world use cases[.] By working closely with the Microsoft AI Co-Innovation Labs, our teams were able to jointly develop and deploy intelligent capabilities that strengthen reliability, enhance customer interactions, and support scalable automation across physical environments."

71. On January 28, 2026, the Company issued a press release titled "Richtech Robotics Announces $38.7 Million Private Placement Priced At-The-Market Under Nasdaq Rules" (the "January 28, 2026 Press Release"). The January 28, 2026 Press Release disclosed that the Company had "entered into a definitive agreement with a fundamentally driven institutional investor for the purchase and sale of 8,500,000 shares of the Company's Class B common stock in a private placement priced at the market under Nasdaq rules." The release further stated that the "private placement is expected to close on or about January 29, 2026, subject to the satisfaction of customary closing conditions."

72. After accounting for expenses, the Private Placement closed on January 29, 2026, yielding approximately $36.2 million in net proceeds.

73. The foregoing statements were materially false and misleading because they omitted facts necessary to make those statements not misleading. Specifically, the Individual Defendants allegedly failed to disclose, among other things, that: (1) the Company did not maintain a commercial collaboration with Microsoft; (2) the Company was not involved in a joint engineering effort with Microsoft; and (3) the Company used false claims regarding its collaborative relationship with Microsoft to increase its stock price ahead of the Private Placement. As a result, the Company's public statements were allegedly materially false and misleading during the Relevant Period.

## DAMAGES TO RICHTECH

35. As a direct and proximate result of the Individual Defendants' misconduct, Richtech has expended and will continue to expend many millions of dollars.

36. Such expenditures include, but are not limited to, legal fees, costs, and any payments for resolution or to satisfy a judgment associated with the Securities Class Action, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

37. Such expenditures will also include costs incurred in any internal investigation pertaining to violations of law, costs incurred in defending any investigations or legal actions taken against the Company due to its violations of law, and payments of any fines or settlement amounts associated with the Company's violations.

38. As a direct and proximate result of the Individual Defendants' conduct, Richtech has suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's actions and misrepresentations and the Individual Defendants' breaches of fiduciary duties.

**DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

39. Plaintiff brings this action derivatively in the right of and for the benefit of Richtech to redress injuries suffered, and to be suffered, as a direct and proximate result of the Individual Defendants' breaches of fiduciary duties, violations of federal law, waste of corporate assets, unjust enrichment, and other wrongful conduct as alleged herein.

40. Richtech is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

41. Plaintiff is an owner of Richtech stock and has been a continuous shareholder of Company stock at all relevant times.

42. Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

43. A pre-suit demand on the Board is futile and therefore, excused. At the time this suit was filed, the Board consisted of the following six individuals: Defendants Wayne Huang, Michael Huang, Factor, Markscheid, and Shigley (the "Director Defendants"). Plaintiff is required to show that a majority of the current Directors cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

44. Each of the Director Defendants faces a likelihood of liability in this action because they caused and/or permitted the Company to make false and misleading statements and omissions concerning the information described herein. Because of their advisory, managerial, and directorial positions within the Company, the Director Defendants had knowledge of material, non-public information regarding the Company and were directly involved in the operations of the Company at the highest levels.

45. The Director Defendants either knew or should have known of the false and misleading statements and omissions that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that misconduct.

46. Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and, with gross negligence, disregarded the wrongs complained of herein and are therefore not disinterested parties.

47. Each of the Director Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements and omissions, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

48. Defendant Wayne Huang is not disinterested or independent and is therefore incapable of considering a demand. Defendant Wayne Huang has served as the Company's CEO since 2016 and is therefore not independent or disinterested under Nasdaq Listing Rule 5605(a)(2). Moreover, Defendant Wayne Huang cannot reasonably be expected to consider with disinterestedness whether to sue fellow directors of the Company at which he serves as the lead executive.

49. Furthermore, Defendants Wayne Huang and Michael Huang are not disinterested or independent because they are named as defendants, and face significant personal liability, in the Securities Class Action based on substantially the same wrongdoing as alleged herein, specifically issuing materially false and misleading statements during the Relevant Period.

50. Further, Defendants Factor, Markscheid, and Shigley served as members of the Audit Committee during the Relevant Period, and thus had greater responsibilities by virtue thereof. Pursuant to the Company's Audit Committee Charter, the members of the Audit Committee are responsible for, *inter alia*, (i) overseeing the integrity of the Company's financial statements, reporting processes, and internal controls, (ii) legal and regulatory compliance, and (iii) otherwise meeting their responsibilities set out in the Audit Committee Charter, as set forth herein. Despite this, Defendants Factor, Markscheid, and Shigley failed to fulfil these additional duties by allowing the false and misleading statements to be made and also by not correcting

them. Therefore, Defendants Factor, Markscheid, and Shigley face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is therefore futile.

51. In violation of the Code of Ethics, the Director Defendants conducted little, if any, oversight of the Company's engagement in the Individual Defendants' scheme to cause the Company to issue materially false and misleading statements to the public and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, waste of corporate assets, and unjust enrichment. In violation of the Code of Ethics, the Director Defendants failed to comply with laws and regulations, failed to maintain the accuracy of company records, public reports, and communications, and failed to uphold the responsibilities related thereto. Thus, the Director Defendants face a substantial likelihood of liability and demand is futile as to them.

52. The Director Defendants received, and continue to receive, substantial salaries, bonuses, payments, benefits, and other emoluments by virtue of their membership on the Board. They have benefitted from the wrongs alleged herein and have engaged therein to preserve their positions of control and the prerequisites thereof and are incapable of exercising independent objective judgment in deciding whether to bring this action.

53. The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Director Defendants can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Director Defendants face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

54. Publicly traded companies, such as Richtech, typically carry director and officer liability insurance from which the Company could potentially recover some or all of its losses. However, such insurance typically contains an "insured vs. insured" disclaimer that will foreclose a recovery from the insurers if the Individual Defendants sue each other to recover the Company's damages. If no such insurance is carried, then the Director Defendants will not cause the Company to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event.

55. Accordingly, each of the Director Defendants, and at least a majority of them, cannot reasonably consider a demand with the requisite disinterestedness and independence. Indeed, any demand upon the Director Defendants is futile and, therefore, excused.

## COUNT ONE

### Against Defendants Wayne Huang and Michael Huang for Contribution Under Sections 10(b) and 21D of the Exchange Act

56. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

57. The conduct of Defendants Wayne Huang and Michael Huang as described herein has exposed the Company to significant liability under various federal securities laws by their misconduct.

58. Richtech and Defendants Wayne Huang and Michael Huang are named as defendants in the Securities Class Action that alleges and asserts claims arising under the federal securities laws. Richtech is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein.

59. If Richtech is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of Defendants Wayne Huang and Michael Huang as alleged herein, who have caused the Company to suffer substantial harm through their misconduct. Richtech is entitled to contribution

and indemnification from Defendants Wayne Huang and Michael Huang in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

60. As officers and directors, Defendants Wayne Huang and Michael Huang had the power or ability to, and did, control or influence, either directly or indirectly, Richtech's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated the federal securities laws.

61. Defendants Wayne Huang and Michael Huang are liable under §21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of any private right of action for contribution asserted pursuant to the federal securities laws.

62. Defendants Wayne Huang and Michael Huang have damaged the Company and are liable to the Company for contribution.

63. As such, Richtech is entitled to receive all appropriate contribution or indemnification from Defendants Wayne Huang and Michael Huang.

## COUNT TWO

### Against the Individual Defendants for Breach of Fiduciary Duties

64. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

65. Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Richtech's business and affairs.

66. Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

67. The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Richtech.

68. In breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

69. In further breach of their fiduciary duties owed to Richtech, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements and omissions of material fact that failed to disclose that: (1) the Company did not maintain a commercial collaboration with Microsoft; (2) the Company was not involved in a joint engineering effort with Microsoft; and (3) the Company used false claims regarding its collaborative relationship with Microsoft to increase its stock price ahead of the Private Placement.

70. The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities.

71. The Individual Defendants failed to correct and caused the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

72. The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent scheme set forth herein and to fail to maintain adequate internal controls. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent scheme set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the

Company to improperly engage in the fraudulent scheme and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Individual Defendants, in good faith, should have taken appropriate action to correct the scheme alleged herein and to prevent it from continuing to occur.

73. These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

74. As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Richtech has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

75. Plaintiff on behalf of Richtech has no adequate remedy at law.

## **COUNT THREE**

### **Against the Individual Defendants for Unjust Enrichment**

76. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

77. By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Richtech.

78. The Individual Defendants either benefitted financially from the improper conduct, received unjustly lucrative bonuses tied to the false and misleading statements, or received bonuses, stock options, or similar compensation from Richtech that was tied to the performance or artificially-inflated valuation of Richtech or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

79. Plaintiff, as a shareholder and a representative of Richtech, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits—including from insider sales, benefits, and other compensation, including any performance-based or

valuation-based compensation—obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties.

80. Plaintiff on behalf of Richtech has no adequate remedy at law.

**COUNT FOUR**

**Against the Individual Defendants for Waste of Corporate Assets**

81. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

82. The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the Relevant Period. It resulted in continuous, connected, and ongoing harm to the Company.

83. As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (a) paying excessive compensation, bonuses, and termination payments to certain of its executive officers, as detailed, *supra*; (b) awarding self-interested stock options to certain officers and directors; and (c) incurring potentially millions of dollars of legal liability and/or legal costs to defend and/or settle the Securities Class Action, addressing the Individual Defendants' unlawful action.

84. As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

85. Plaintiff on behalf of Richtech has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A. Declaring that Plaintiff may maintain this derivative action on behalf of Richtech and that Plaintiff is a proper and adequate representative of the Company;

B. Against all of the Defendants and in favor of Richtech for the amount of damages sustained by the Company as a result of the acts and transactions complained of herein;

C. Granting appropriate equitable relief to remedy the Defendants' breaches of

fiduciary duties, including, but not limited to the institution of appropriate corporate governance measures;

D. Awarding Richtech restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: May 13, 2026

Respectfully submitted,

**LEVERTY & ASSOCIATES LAW CHTD.**

Patrick R. Leverty, Esq. NV Bar No. 8840
608 Lander Street
Reno, NV 89509
Tel.: (775) 322-6636
Fax: (775) 322-3953
Email: pat@levertylaw.com

**THE ROSEN LAW FIRM, P.A.**

Phillip Kim
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: philkim@rosenlegal.com

*Counsel for Plaintiff*

Docusign Envelope ID: EC49B05B-FEBC-40D0-BE9F-ACE5820D3FF1


# **VERIFICATION**

I, Kenneth Dawson am a plaintiff in the within action. I have reviewed the allegations made in this shareholder derivative complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct. 5/12/2026

Signed by:

C4CDC8698DB24C7...

Kenneth Dawson